**2023-1682; 2023-1900**

# United States Court of Appeals for the Federal Circuit

BULLSHINE DISTILLERY LLC,

*Appellant,*

– v. –

SAZERAC BRANDS, LLC,

*Cross-Appellant.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 91227653*

## RESPONSE AND REPLY BRIEF FOR APPELLANT

JOHN R. HORVACK, JR.
FATIMA LAHNIN
DAMIAN K. GUNNINGSMITH
CARMODY TORRANCE SANDAK
& HENNESSEY LLP
195 Church Street
New Haven, Connecticut 06510
(203) 777-5501
jhorvack@carmodylaw.com
flahnin@carmodylaw.com
dgunningsmith@carmodylaw.com

*Counsel for Appellant*

OCTOBER 30, 2023

COUNSEL PRESS, LLC (888) 277-3259

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

TABLE OF ABBREVIATIONS ........ v

JURISDICTIONAL STATEMENT ........ 1

COUNTERSTATEMENT OF THE ISSUES PERTINENT TO CROSS-APPEAL NO. 2023-1900 ........ 2

COUNTERSTATEMENT OF THE CASE ........ 3

SUMMARY OF ARGUMENT ........ 5

ARGUMENT ........ 7

I. THE COURT SHOULD REVERSE THE BOARD'S REJECTION OF BULLSHINE'S GENERICNESS COUNTERCLAIM ........ 7

A. The Board erred by failing to apply the correct legal standard to this genericness case ........ 7

1. Cancellation for Genericness is Not Restricted to Genericide ........ 8

2. The Board Wrongly Transformed an Admittedly Generic Term Into a Subject for Trademark ........ 9

3. Opposer's Chart of Alleged "Deliberate Mischaracterizations" Confirms the Board Wrongly Converted a Generic Term into a Trademark ........ 17

4. Whether the Board applied the Correct Legal Standard is a Question of Law That This Court Reviews *De Novo* ........ 18

B. Based on the Board's Factual Findings, There is Only One Correct Legal Conclusion .......... 20

1. The correct legal analysis focuses on whether the "fireball" designation was generic before Opposer's trademark use and registration .......... 20

2. As a flavor, "Fireball" cannot be monopolized by a single vendor and instead must be available to all potential competitors .......... 23

3. "FireBall" is also the generic term for a type of cinnamon flavored alcoholic beverage .......... 25

C. When erroneously evaluating secondary meaning in assessing genericness, the Board failed to apply a heightened and exacting standard .......... 28

II. THE COURT SHOULD AFFIRM THE BOARD'S REJECTION OF OPPOSER'S LIKELIHOOD OF CONFUSION CLAIM .......... 28

A. Standard of Review .......... 28

B. If the Court concludes that the "Fireball" registrations are invalid, Opposer's Cross Appeal is properly denied .......... 29

C. The Court should affirm because "Fireball" and "Bullshine Firebull" are far too different for confusion to occur .......... 29

D. Opposer proved with survey evidence that "Fireball" is not a famous trademark, and the Board did not err in rejecting the Opposer's claim of fame .......... 30

E. Substantial evidence supports the Board's finding that "Fireball" is conceptually weak .......... 31

III. CONCLUSION .......... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976)........................................................................ 11

*A.J. Canfield Co. v. Honickman*,
808 F.2d 291 (3d Cir. 1986)............................................................ 6, 7, 23, 25

*Bose Corp. v. QSC Audio Products, Inc.*,
293 F.3d 1367 (Fed. Cir. 2002)................................................................ 31

*Harley Davidson, Inc. v. Grottanelli*,
164 F.3d 806 (2d Cir. 1999)............................................................... 15, 20

*In re Chippendales USA, Inc.*,
622 F.3d 1346 (Fed. Cir. 2010)................................................................ 21

*In re Cordua Restaurants, Inc.*,
823 F.3d 594 (Fed. Cir. 2016)............................................................... 6, 26

*In re Hotels.com, L.P.*,
573 F.3d 1300 (Fed. Cir. 2009)................................................................ 19

*In re Pennington Seed, Inc.*,
466 F.3d 1053 (Fed. Cir. 2006)............................................................. 9, 19

*Keebler Co. v. Rovira Biscuit Corp.*,
624 F.2d 366 (1st Cir. 1980) ................................................................... 13

*Kellogg Co. v. Pack'em Ent. Inc.*,
951 F.2d 330 (Fed. Cir. 1991).................................................................. 29

*Leading Jewelers Guild, Inc. v. Ljow Holdings, LLC*,
82 U.S.P.Q.2d 1901 (T.T.A.B. 2007) ....................................................... 31

*Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co., Inc.*,
908 F.3d 1315 (Fed. Cir. 2018)................................................................ 29

*Otokoyama Co. Ltd. v. Wine of Japan Imp., Inc.*,
175 F.3d 266 (2d Cir. 1999)........................................................................ 11

*Royal Crown Co., Inc. v. The Coca-Cola Co.*,
892 F.2d 1358 (Fed. Cir. 2018)........................................... 7, 13, 15, 19, 21, 32

*Singleton v. Wulff*,
428 U.S. 106 (1976)....................................................................................... 8

*Weiss Noodle Co. v. Golden Cracknel & Specialty Co*.,
290 F.2d 845 (C.C.P.A. 1961) .................................................................. 13, 32

**Statutes**

15 U.S.C. § 1064(3) ...................................................................................... 8, 9

15 U.S.C. § 1067 ............................................................................................... 9

15 U.S.C. § 1068 ............................................................................................... 9

15 U.S.C. § 1071 ............................................................................................... 1

**Other**

2 McCarthy on Trademarks and Unfair Competition (5th ed.), § 12:1 ............ 11

2 McCarthy on Trademarks and Unfair Competition (5th ed.), § 12:60 ............ 8

37 C.F.R. § 2.122(b)(2)...................................................................................... 5

# TABLE OF ABBREVIATIONS

"Board" – The Trademark Trial and Appeal Board

"Bullshine" – Bullshine Distillery LLC

"Opposer" – Sazerac Brands, LLC

"Sazerac" – Sazerac Brands, LLC

"'432 Registration" – U.S. Trademark Registration No. 2,852,432

"'110 Registration" – U.S. Trademark Registration No. 3,550,110

# JURISDICTIONAL STATEMENT

Bullshine agrees that this Court has jurisdiction over Opposer's likelihood of confusion cross-appeal under 15 U.S.C. § 1071, and that Opposer's notice of cross-appeal was timely filed.

## COUNTERSTATEMENT OF THE ISSUES PERTINENT TO CROSS-APPEAL NO. 2023-1900

1. Whether the Court should dismiss the cross-appeal upon concluding that the "fireball" designation is generic.

2. Whether the dissimilarity of the marks alone is "dispositive" of Opposer's likelihood of confusion challenge.

3. Whether substantial evidence supports the Board's finding that "fireball' is not famous, including Opposer's own survey evidence.

4. Whether substantial evidence supports the Board's finding that "fireball" is conceptually weak.

## COUNTERSTATEMENT OF THE CASE

Citing to Appx638, Opposer claims that "fireball" has been "the brand name of a distilled spirit sold in the U.S. since the 1980s." (Cross-Appellant's Principal and Response Brief "CA Br.", at 4.) That is an untrue statement, not found by the Board and not supported by the record. The record shows only that in 1989, Opposer acquired a license to use the "Dr. McGillicuddy's" trademark for a line of flavored schnapps (mentholmint, cherry plum, peach, and wild blackberry) in the U.S., while Seagram was offering "Dr. McGillicuddy's Fireball" in Canada. (Appx638.)

Opposer also claims that having acquired rights in the "fireball" trademark from two predecessors, it began selling "Dr. McGillicuddy's Fireball" in 2001. (CA Br. at 4.) Again, not true. First, Opposer acquired the rights in the "Dr. McGillicuddy's Fireball" trademark in 1999, from Seagram. (Appx20.) Opposer then filed an intent to use trademark application—not for "fireball" alone—but for "Dr. McGillicuddy's Fireball" in 2000. (Appx20; Appx3124-3128.) During prosecution, the USPTO issued an office action requiring a disclaimer of "fireball" because a fireball is a "whiskey based alcoholic drink." (Appx3130-3132.) Without challenging the requirement, Opposer entered the disclaimer on February 15, 2001, affirming "no claim is made to the exclusive right to use 'FIREBALL' apart from the mark as shown." (Appx3137-3138.) Therefore, as it relates to Seagram and

"Dr. McGillicuddy's Fireball," Opposer never received any rights in a "fireball" trademark and acknowledged that fact before the USPTO.

Second, Marie Brazard (a/k/a Mohawk) assigned to Opposer its trademark application for "fireball" for liqueurs in August 2002. (Appx2418-2419.) The assignment was part of a Settlement Agreement that resolved Marie Brazard's claim that Opposer infringed Marie Brazard's rights in "fireball" by selling "Dr. McGillicuddy's Fireball." (Appx2425-2433.) In the lawsuit, Opposer had contended, in July 2001, that "fireball" alone is "the generic term for a type of cinnamon flavored alcoholic beverage and thus is not protectible as a trademark under federal or state law." (Appx38; Appx3151-3156.) As part of the settlement, Opposer did not acquire rights in the goods associated with Marie Brazard's trademark application for "fireball." (Appx2425-2433.) Marie Brazard agreed to sell off its inventory. (Appx2428-2429.) Opposer never sold Marie Brazard's "fireball" product, and instead continued to sell "Dr. McGillicuddy's Fireball" until 2007. (Appx3151-3156.) Therefore, while Opposer was assigned a trademark for "fireball," it never used the trademark for the associated goods and only continued to sell "Dr. McGillicuddy's Fireball" with "fireball" disclaimed.

Opposer also suggests that Marie Brazard's first use of "fireball" was in September 1988. (CA Br., at 5.) Not true. Opposer cites to the date of first use claimed in Marie Brazard's application. But that is "not evidence" and instead, "a

date of use of a mark must be established by competent evidence." 37 C.F.R. § 2.122(b)(2). Opposer did not cite to any "competent evidence" in its Opening Brief to substantiate a first use date of 1988. Nor was any presented to the Board.

## SUMMARY OF ARGUMENT

The Board systematically unwound its own genericness findings that the "fireball" designation was both (i) a name of an alcoholic drink and (ii) a spicy, cinnamon, candy-like flavor. The Board did so by explicitly relying upon an "evolving" public perception of "fireball" allegedly created by the Opposer's "popularity," "meteoric rise," "success over the past decade, "at least modest success[]," "sales and advertising figures," and "media attention." The Board also (oddly) relied upon the popularity of Atomic Fireball candy to salvage the genericness of "fireball" for whiskey and liqueurs. But the law prohibits reliance upon any form of de facto secondary meaning to transform a generic term into a subject for trademark protection. This Court should, therefore, reverse because the Board failed to apply the correct legal standard to the facts of this case.

The Court should also remand with instructions that the Board cancel the '432 Registration and '110 Registration, as generic. The Board's findings leave no room for any other result. First, the Board found that "fireball" denotes a "spicy, cinnamon candy-like" taste; that Opposer admitted its product has the "same flavoring" as fireball candy; and that the "fireball" taste/flavor was known before

Opposer started selling Dr. McGillicuddy's Fireball. Thus, as a flavor, "fireball" is generic and must be available to all potential competitors. *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 307–08 (3d Cir. 1986).

Second, the Board found that "fireball" was used in "a non-trademark manner in connection with alcoholic beverages, many with sweet/spicy cinnamon flavor"; Opposer admitted in 2001, "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage"; that "fireball" is the name of cocktails, shots and shooters, most of which include whisky or liqueur(s) as ingredients; that "fireball" names the cocktail/shot/shooter, not a brand of whisky or liqueur; and that like "martini" and "margarita," "fireball" often directly suggests certain alcoholic mixed drinks, rather than the source of particular liquors or liqueurs. Therefore, as "a type" of alcoholic beverage—not a source or brand, "fireball" is generic and cannot be monopolized by any one vendor. *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 605 (Fed. Cir. 2016).

Finally, the Court should dismiss Opposer's cross-appeal as moot. If it is adjudged that the "fireball" designation is generic for the goods at issue, then Opposer has no right to oppose Bullshine's trademark. Alternatively, the Court should affirm because Bullshine's trademark is far too different from "fireball" for a likelihood of confusion to exist. Additionally, "fireball" is not famous. Opposer's own survey proved that despite Opposer's marketing efforts, a majority of those

targeted by that marketing do not consider "fireball" to be a brand—let alone a famous brand. Lastly, the Board's findings directed to genericness of "fireball"—including as a name of a cocktail/shot/shooter (not a brand), and as a flavor—fully support the finding that "fireball" is conceptually weak. Because the Board's determination that there was not a likelihood of confusion was supported by substantial evidence, the Court should affirm.

## ARGUMENT

### I. THE COURT SHOULD REVERSE THE BOARD'S REJECTION OF BULLSHINE'S GENERICNESS COUNTERCLAIM.

#### A. The Board erred by failing to apply the correct legal standard to this genericness case.

The Board violated a first principle of trademark law: "Generic terms cannot be rescued by proof of distinctiveness or secondary meaning no matter how voluminous the proffered evidence may be." *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1370 (Fed. Cir. 2018). A generic term is the "ultimate in descriptiveness" and "can never attain trademark status." *Id.* at 1366. Consequently, evidence that a generic term has become associated with one producer is legally irrelevant and "proves only what courts call 'de facto' secondary meaning." *A.J. Canfield Co.*, 808 F.2d at 297.

The Board, however, explicitly and systematically credited the Opposer's use of "fireball" and the public identification created by that use. In response, the

Opposer does not challenge the first principles of trademark law, but contends instead, that the Board did not err by applying an incorrect legal standard. The Opposer makes a variety of arguments. Each should be rejected.

1. Cancellation for Genericness is Not Restricted to Genericide.

Opposer first contends that because Bullshine's genericness challenge does not involve genericide, cancellation is "not even an available remedy" in this case. (CA Br., at 19.) The Court should reject that argument because it was not raised or passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[A] federal appellate court does not consider an issue not passed upon below.")

Opposer's unpreserved argument is also meritless. Opposer contends that the statutory language "becomes the generic name" in 15 U.S.C. § 1064(3) allows cancellation of a trademark registration based only on genericide. According to Opposer, cancellation is unavailable here because the designation was generic before Opposer sought to monopolize the "fireball" designation. (CA Br., at 18-19.) The Court should reject this argument for two reasons.

First, no court has ever agreed with Opposer's argument, and a leading trademark commentator has characterized it as leading to an "absurd result." *See* 2 McCarthy on Trademarks and Unfair Competition (5th ed.), § 12:60. Indeed, the *Pennington Seed* case cited by Opposer does not support Opposer's position. There, this Court upheld the Board's refusal to register "Rebel" on genericness

grounds because the designation "always" indicated a variety of grass seed. *In re Pennington Seed, Inc.*, 466 F.3d 1053, 1060 (Fed. Cir. 2006) ("'Rebel' does not function as a source indicator, but rather indicates, and always has indicated, a variety of grass seed."). The "Rebel" designation thus failed on non-genericide grounds, and as a result, the *Pennington Seed* case fails to support Opposer's unpreserved argument.

Second, opposition proceedings, as we have here, are governed by 15 U.S.C. §§ 1067 & 1068. In particular, 15 U.S.C. § 1068 broadly provides that in such a proceeding, "the Director … may cancel the registration, in whole or in part… [or] restrict or rectify with respect to the register the registration of a registered mark." Therefore, regardless of Opposer's unpreserved and unsupported interpretation of 15 U.S.C. § 1064(3), the Opposer's "fireball" registrations are subject to cancellation on genericness grounds.

Therefore, on procedural and/or substantive grounds, the Court should reject Opposer's contention that a registered trademark cannot be canceled on non-genericide, genericness grounds.

2. <u>The Board Wrongly Transformed an Admittedly Generic Term Into a Subject for Trademark.</u>

Opposer next contends that the Board did not credit Opposer's use of the "fireball" designation or the de facto secondary meaning created by that use. (CA

Br., at 45-46.) The Board's written decision proves otherwise. For example, the Board's introduction to the "Relevant Facts" states:

> The term "fireball" has been used to describe cocktails and candy, as well as their taste and flavor. It has also been used as a trademark to identify alcoholic beverages and candy. Perhaps not surprisingly, public perception and use of the term has evolved, and is largely context-dependent.

(Appx8.)

This reflects a fundamental misunderstanding of the law. A generic term used to describe cocktails, as well as their taste and flavor, cannot "also" be used as a trademark to identify those same goods. Here, the Board found both that "fireball" was a name for alcoholic cocktails and/or shots (Appx11) and denotes a "spicy, cinnamon and candy-like taste"—which was "a fact" that Opposer did not "seriously dispute." (Appx48.) And when concluding the conceptual strength of "fireball" to be weak, the Board expanded on these findings. (Appx58-60.)

As to the name for cocktails and/or shots, the Board explained:

> In fact, "fireball" is the name, or part of the name, of a number of cocktails, shots and shooters, most of which include whisky or liqueur(s) as ingredients. But "fireball" names the cocktail/shot/shooter, <u>not a brand</u> of whisky or liqueur. In other words, "fireball," like "martini" and "margarita," often directly suggests certain alcoholic mixed drinks, <u>rather than the source</u> of particular liquors or liqueurs with which the drinks are made.

(Appx59) (emphasis added).

As to the "fireball" flavor, the Board found:

> Opposer admits that its FIREBALL cinnamon whisky and ATOMIC FIREBALL candy have "the same flavoring," . . . and a number of media reports reveal that much of the relevant public perceives "fireball" as describing the flavor of ATOMIC FIREBALL candy, and thus Opposer's cinnamon whisky as well.
>
> Thus, "fireball" is highly suggestive of the taste and flavor of Opposer's "sweet/spicy cinnamon"–flavored whisky/liqueur. This taste/flavor has long been known to many consumers who have tried ATOMIC FIREBALL candy, since before Opposer started selling DR. MCGILLICUDDY'S FIREBALL, and it is a desired cocktail/shot/shooter flavor as evidenced by the number of recipes that attempt to mimic it.

(Appx59-60) (emphasis added).

Consequently, the Board had to apply the "bedrock principle" that "no trader may acquire the exclusive right to the use of a term by which the covered goods or services are designated in the language." *Otokoyama Co. Ltd. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). Generic terms and trademarks are "mutually exclusive"—precisely because a generic term "can never function as a trademark to indicate origin." *See* 2 McCarthy on Trademarks and Unfair Competition (5th ed.), § 12:1.

Moreover, even if "public perception and use" of the "fireball" designation had "evolved" over time, as found by the Board, that fact "cannot transform a generic term into a subject for trademark." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). "No matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise

and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Id.*

Not only did the Board's decision begin with this erroneous understanding of trademark law, but the Board consistently applied that incorrect legal framework throughout its decision. The Board found that the evidence of genericness, especially around the time of registration, is "significant." (Appx37.) The Board found, for example, that the Opposer had been "unequivocal" in a federal court pleading in 2001, that "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage and thus is not protectable as a trademark under Federal or State law." (Appx38.) The Board concluded: "This assertion directly and obviously supports Applicant's genericness counterclaim." (Appx38.)

Nevertheless, the Board immediately nullified the evidence with its erroneous understanding of the law. The Board reasoned that the Opposer's genericness admission was "over 21 years ago" and "about a decade before FIREBALL cinnamon-flavored whisky's popularity started its meteoric rise." (Appx38) (emphasis added). Thus, the Board's decision explicitly allowed a generic term to be transformed into a subject for trademark because of its meteoric rise in popularity over a 21-year period. That is legally wrong. "No amount of purported proof that a generic term has acquired a secondary meaning associating

it with a particular producer can transform that term into a registrable trademark." *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 (1st Cir. 1980).

The Board continued:

> Today, the record shows that as a result of FIREBALL whisky's success over the past decade, the term "fireball" is used and understood differently by the relevant public than it was in 2001, and is now much more likely to be perceived as a source identifier for Opposer's cinnamon-flavored whisky.

(Appx38) (emphasis added).

But generic terms can never function as a source identifier no matter the level of promotion or the level of success in creating de facto secondary meaning. This has been a foundational principle of law in this Circuit, and elsewhere, since at least 1961. *Weiss Noodle Co. v. Golden Cracknel & Specialty Co*., 290 F.2d 845, 847–48 (C.C.P.A. 1961) ("[N]o matter what the market situation may have been as to indication of origin or secondary meaning, the common descriptive name of the product cannot become a trademark owned exclusively by one vendor.").

Yet, here, the Board found that the Opposer unequivocally admitted that the "fireball" designation was generic in 2001, and then the Board "rescued" the generic term with proof of the Opposer's product's popularity and commercial success. That violates the law and demands reversal. *See Royal Crown*, 892 F.3d at 1370 (reversing the Board because "[g]eneric terms cannot be rescued by proof of

distinctiveness or secondary meaning no matter how voluminous the proffered evidence may be.”).

Likewise, the Board concluded that when considering the evidence at the times of registration (2001 and 2008), the question of genericness presented “a close question.” (Appx48.) The Board found “significant evidence of genericness at the time of registration.” (Appx49.) In fact, the Board’s decision explicitly found that “Fireball denotes spicy, cinnamon and candy-like taste”—which was “a fact established elsewhere in the record that Opposer does not seriously dispute.” (Appx48.)[1] But the Board again undermined its own fact finding—this time with a “safe[] assum[ption]” about alleged trademark use and de facto secondary meaning. (Appx50.) The Board reasoned:

> By contrast, the record makes clear that at the time of registration, ATOMIC FIREBALL was the trademark for a <u>popular</u> candy that publications assumed consumers would remember from their childhoods, and DR. MCGILLICUDDY’S FIREBALL was an <u>at least modestly successful</u> whisky/liqueur beverage. Thus, we can <u>safely assume</u> that even at the time of registration, FIREBALL was known by <u>many</u> relevant consumers as a trademark, whether for candy <u>or</u> whisky/liqueurs, rather than as a nondistinctive term for a specific flavor.

(Appx50) (emphasis added).

[1] As noted, the Board later expanded on these findings when determining the conceptual strength of “fireball” was weak. (Appx59-60.)

Thus, the Board legally erred in at least two respects. First, the Board rescued the admittedly generic term with a "safe" assumption that the "fireball" designation was known by "many relevant consumers" as a trademark for candy or whisky/liqueurs. (*Id.*) Assumptions—even safe ones—are not evidence.

Second, the Board drew its "safe" assumption explicitly from the "popular[ity]" of Atomic Fireball candy and the "at least" modest success of Dr. McGillicuddy's Fireball. (*Id.*) But generic terms cannot be rescued by popularity or commercial success. *Royal Crown*, 892 F.3d at 1370 ("To the extent the Board relied on TCCC's sales and advertising figures as part of the genericness inquiry, it erred in doing so.").

Moreover, here, the Board focused, in part, on the "at least modest[] success" of "Dr. McGillicuddy's Fireball." But for this composite trademark, the Opposer had disclaimed any right to the exclusive use of "fireball" alone—specifically, because the Examiner had determined that "fireball" was the name of a "whiskey based alcoholic drink." (Appx3131; Appx3137-3138.) Additionally, in this composite mark, "fireball" is a noun with "Dr. McGillicuddy's" as its tradename adjective and that confirms that "fireball" is generic. *See Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 809 (2d Cir. 1999) ("Honda Hog" proves "hog" was generic because it needed a tradename adjective). Opposer's composite mark also uses the possessive "Dr. McGillicuddy's" to introduce

"fireball." This shows that the product was one version of a fireball flavored beverage (*i.e.*, Dr. McGillicuddy's version), thus acknowledging other versions exist. Therefore, the Board erred by crediting purported trademark use and de facto secondary meaning to rescue what Opposer had unequivocally admitted was a generic term.

Finally, the Board's analysis both at the time of registration and the time of trial confirms that the Board wrongly credited Opposer's use and de facto secondary meaning. (Appx48-51.) As noted, for the times of registration, the Board found "significant" evidence of genericness. (Appx48-49.) At the time of trial, however, the Board found that the evidence was "more 'mixed' and 'ambiguous'"—precisely because of Opposer's creation of *de facto* secondary meaning. (Appx51.) The Board reasoned:

> By [the time of trial], Opposer's FIREBALL cinnamon whisky had become <u>significantly</u> <u>more</u> <u>popular</u> than it was at the time of registration, as reflected by <u>sales</u> and <u>advertising</u> <u>figures</u> and <u>media</u> <u>attention</u>. Furthermore, in the past 10-15 years, Opposer has <u>consistently</u> <u>treated</u> and <u>used</u> FIREBALL as a trademark, and it <u>successfully</u> <u>enforced</u> its asserted rights in FIREBALL against many of the third-party users of the term cited by Applicant in support of its counterclaims. Thus, the record does not support a finding that FIREBALL was generic for whisky or liqueurs at the time of trial.

(Appx51.)

Therefore, contrary to Opposer's arguments, the Board unambiguously credited Opposer's use of the "fireball" designation and de facto secondary

meaning to overcome "significant" evidence of genericness, including Opposer's own "unequivocal" admission that "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage" and the uncontested fact that "Fireball denotes spicy, cinnamon and candy-like taste."

### 3. Opposer's Chart of Alleged "Deliberate Mischaracterizations" Confirms the Board Wrongly Converted a Generic Term into a Trademark.

Opposer also argues that Bullshine engaged in "deliberate mischaracterizations of the Board's findings" in an "ill-advised attempt to portray legal error." (CA Br., at 23.) Opposer created a chart that purports to show these alleged mischaracterizations. (CA Br., at 23-26.) But Opposer's chart only confirms that the Board wrongly transformed a generic term into a subject for trademark protection. Specifically, each statement in the "What Bullshine Says" column is accurate, and each accurate statement is supported by specific and accurate citations to the Board's decision.

As to the first statement in Opposer's chart, for example, the Board did make factual findings that the "fireball" designation was generic before Opposer's attempted monopolization. The Board found that "fireball" was used in "a non-trademark manner in connection with alcoholic beverages, many with a sweet/spicy cinnamon flavor" and "many of which include whiskey or cinnamon schnapps." (Appx10-11.) The earliest "fireball" drink recipe cited by the Board

was from April 1997. (Appx12.) The Board also found that Opposer admitted, in 2001, that "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage and thus is not protectable as a trademark under Federal or State law." (Appx38.) The Board found the admission to be "unequivocal." (*Id.*) The Board further found "Fireball denotes spicy, cinnamon and candy-like taste" and that was "a fact established elsewhere in the record that Opposer does not seriously dispute." (Appx48.) The Board also expanded on these finding when assessing the lack of conceptual strength of the "fireball" designation. (Appx58-60.)

Nevertheless, Opposer's quotation in the column "What the Board Said" is also accurate. (CA Br., at 23.) The Board did conclude: "We therefore find that FIREBALL was not generic at the time of registration." (Appx51.) Therefore, Opposer's chart brings into sharp focus the Board's legal error. On the one hand, the Board found that "fireball" was both an admitted generic name for a type of alcoholic beverage and an uncontested flavor that denotes a spicy, cinnamon and candy-like taste. But on the other hand, the Board concluded that the designation was not generic. The two are irreconcilable under the law and occurred precisely because the Board transformed the generic term into a subject for trademark, by wrongly relying upon evidence of *de facto* secondary meaning.

4. Whether the Board applied the Correct Legal Standard is a Question of Law That This Court Reviews *De Novo*.

Opposer next argues that genericness is a question of fact and "thus the only question on appeal is whether substantial evidence supports the Board's findings." (CA Br., at 27) (emphasis added). That is not the law.

This Court reviews "the Board's legal determinations de novo and without deference." *Royal Crown*, 892 F.3d at 1364. "Whether the Board applied the correct legal standard to the facts is a question of law." *Id.* The Board commits legal error when it ignores that "[g]eneric terms cannot be rescued by proof of distinctiveness or secondary meaning" and/or relies on "sales and advertising figures as part of the genericness inquiry." *Id.* at 1370. That is precisely what occurred here.

Moreover, the cases cited by Opposer do not support its argument. Both *Pennington Seed* and *In re Hotels.com* explicitly recognized that this Court reviews legal determinations *de novo. Pennington Seed*, 466 F.3d at 1056; *In re Hotels.com, L.P.*, 573 F.3d 1300, 1302 (Fed. Cir. 2009). In addition, the Court in *Pennington Seed* applied that standard of review to conclude that plant varietal names are generic as a matter of law. *Pennington Seed*, 466 F.3d at 1059–60. Therefore, Opposer's contention that "the only question" is whether substantial evidence supports the Board's findings is wrong as a matter of law.

For the foregoing reasons, the Court must reverse because the Board failed to apply the correct legal standard when deciding whether the "fireball" designation was generic.

### B. Based on the Board's Factual Findings, There is Only One Correct Legal Conclusion.

#### 1. The correct legal analysis focuses on whether the "fireball" designation was generic before Opposer's trademark use and registration.

"No manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use." *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999). Consequently, the genericness inquiry must focus on whether the term was generic for the goods at issue "prior to the proprietor's trademark use and registration." *Id.* at 811. The Board, however, analyzed the question using two timeframes: (1) the times of registration (2001 and 2008), and (2) the time of trial.

Opposer does not defend the Board's analysis of the genericness question at the time of trial. That timeframe is wrong precisely because this is not a genericide case. Opposer instead attempts to defend the Board's genericness analysis at the times of registration, 2001 and 2008. (CA Br., at 28-30.) Relying on *Chippendales*, Opposer argues that the proper focus is on "'the factual situation as of the time when registration is being sought,' not the time of first use." (CA Br., at 30.) Opposer's reliance on *Chippendales* is misplaced.

In *Chippendales,* the Court analyzed, among other things, what was the proper time for measuring whether trade dress was inherently distinctive. This Court concluded that the proper time for measuring inherent distinctiveness is at the time of registration. *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1354 (Fed. Cir. 2010). Thus, *Chippendales* is not instructive of the question in this case, namely, what is the proper time for assessing genericness of a word designation.

As to the issue in this case, this Court's precedent could not be more clear: "A generic mark, being the 'ultimate in descriptiveness,' cannot acquire distinctiveness[, and] generic terms . . . can never attain trademark status." *Royal Crown Co., Inc.*, 892 F.3d at 1366 (internal quotations and citations omitted). Thus, establishing a rule that requires genericness to be assessed as of the time a manufacturer adopts a term is harmonious with this precedent. Moreover, doing so would preempt the very confusion that this case typifies. Specifically, there would be (or at least should be) no risk that the Board, or a lower court, could be improperly swayed by de facto secondary meaning created after a manufacturer's adoption of generic term.

To be clear, however, Bullshine does not dispute that in many cases the time registration is sought and the time of adoption of the term may coincide. Indeed, in an ordinary case, the two timeframes (registration and first trademark use) are likely to be synonymous, or at least, not markedly different.

But here, they are different. As detailed in Bullshine's Opening Brief (Appellant Br., at 23-25), Opposer (1) acquired a line of Dr. McGillicuddy products from Seagram in 1999, (2) sought trademark protection for "Dr. McGillicuddy's Fireball" in March 2000, (3) filed a disclaimer that it was making no claim to the exclusive right to use "FIREBALL" alone, (4) continuously sold "Dr. McGillicuddy's Fireball" in the United States from March 2001 until April 2007, (5) changed the product name to "Fireball" alone in April 2007, and (6) sought trademark protection, in 2008, for "Fireball" alone claiming a first use date of April 2007. Therefore, considering these facts alone, the proper genericness inquiry would focus on 2007 (time of first trademark use) or 2008 (time of registration).

But Mohawk assigned a trademark application for "fireball" to Opposer in August 2002. (Appx2418-2419.) Mohawk had filed that application in November 2001 and Opposer secured issuance of the '432 Registration in June 2004. (Appx3072-3073.) Notably, Opposer pursued the application and secured issuance of the '432 Registration, even though:

1. Opposer never received any rights in the goods associated with the '432 Registration and never sold that product (Appx2425-2433; Appx5238);

2. Opposer only sold "Dr. McGillicuddy's Fireball" in United States from 2001 until 2007 (Appx3119; Appx5237-5240), after disclaiming exclusive rights to "Fireball" alone in

February 2001 during prosecution of "Dr. McGillicuddy's Fireball." (Appx3130-3135; Appx3137-3138); and

3. Opposer asserted in July 2001, in response to Mohawk's infringement action that: "The FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage and thus is not protectible as a trademark under federal or state law." (Appx38; Appx3151-3156.)

Therefore, under these unique facts, genericness is properly analyzed when Opposer admittedly rebranded to "fireball" alone in 2007, and thereby, sought to take the "fireball" designation out of the public domain. Nevertheless, under any of the timeframes (2001, 2007 or 2008), the Board's factual findings demanded a determination that the "fireball" designation was generic for whiskey and liqueurs.

2. <u>As a flavor, "Fireball" cannot be monopolized by a single vendor and instead must be available to all potential competitors.</u>

The Board found that the "fireball" designation was a flavor. The Board's decision states that "Fireball denotes spicy, cinnamon and candy-like taste" and found that was "<u>a</u> <u>fact</u>" that was "established elsewhere in the record" and one "that Opposer does not seriously dispute." (Appx48) (emphasis added). The Board also found the "fireball" flavor was known well before Opposer started selling Dr. McGillicuddy's Fireball in 2001. (Appx59.) Given that, "fireball"—like any other flavor—is generic and cannot be monopolize by any one vendor. *See A.J. Canfield*, 808 F.2d at 305.

Opposer submitted one argument to refute that legal conclusion. Specifically, attempting to distinguish *A.J. Canfield*, Opposer contends that the "fireball" designation is not "necessary" to describe a whiskey and/or liqueur that attempts to replicate the taste of Atomic Fireball candy. (CA Br., at 42–43.) As support for its argument, Opposer points to competitors who sell cinnamon flavored whiskeys without using the "fireball" designation. (CA Br., at 42.) There are two responses, one practical and one legal.

First, practically, no competitor is free to use the "fireball" designation because of Opposer's "fireball" registrations. Indeed, Opposer proudly touts that it vigorously enforces its trademark rights and has thereby prevented competitors from selling a "fireball" flavored whiskey.

Second, legally, the *A.J. Canfield* case establishes that the "fireball" designation is "necessary" to communicate that the whiskey is flavored to taste like an Atomic Fireball candy. The *A.J. Canfield* case dealt with the flavor "chocolate fudge" for diet soda. As the Third Circuit explained:

> Flavors … have <u>unique</u> <u>characteristics</u>, and we can imagine no term other than "chocolate fudge" that communicates the <u>same</u> <u>functional</u> <u>information</u>, namely, that this soda has the taste of chocolate fudge, <u>a</u> <u>particular</u>, <u>full</u>, <u>rich</u> <u>chocolate</u> <u>taste</u>… Notwithstanding Canfield's role in creating the demand for this kind of product, the trademark laws do not give it the right to be the sole producer of a diet soda tasting like chocolate fudge. Such a right could only come from the patent laws. Accordingly, we conclude on this record that the term "chocolate fudge" as applied to diet soda is generic and is available to all potential competitors.

*A.J. Canfield*, 808 F.2d at 308 (emphasis added).

For identical reasons, the "fireball" designation as applied to whiskeys and liqueurs is generic and should be available to all potential competitors. All marketplace participants have the right to make and sell whiskeys and liqueurs that seek to replicate the flavor of fireball candy. Flavors have unique characteristics, and therefore, no term other than "fireball" can communicate that same functional information. Therefore, the Court should reverse the Board's decision and remand with an instruction that the Board cancel the Opposer's registrations because the "fireball" designation is a particular flavor that must be available to all potential competitors.

3. "Fireball" is also the generic term for a type of cinnamon flavored alcoholic beverage.

All vendors have the right to make and sell a "Martini" or a "Manhattan," or any of the thousands of alcoholic beverages listed in bartending books and guides. These are names for "a type" of alcoholic beverage, irrespective of source. So too for a "Fireball."

As explained by the Board, "fireball" names the cocktail/shot/shooter, not a brand of whisky or liqueur." (Appx59.) The Board also found that the Opposer unequivocally admitted in 2001, that "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage." The Board likewise found that

"fireball" was used in "a non-trademark manner in connection with alcoholic beverages, many with sweet/spicy cinnamon flavor." (Appx10-11.) As noted, the first "fireball" recipe cited by the Board's decision was from April 1997. (Appx12.) Given these findings alone, "fireball"—just like "martini," "manhattan" or "margarita"—is a generic term for a type of alcoholic beverage and cannot be monopolize by any one vendor. *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 605 (Fed. Cir. 2016) ("Churrasco" is generic as a type of restaurant). Opposer submitted a variety of arguments seeking to avoid this result. Each should be rejected.

*i. Consistency of "Fireball" Recipes is Irrelevant.*

Opposer contends that the Board's finding that "fireball" recipes are not consistent, as "[s]ome do not include whiskey and others may not even have a spicy/sweet cinnamon flavor," precludes a determination that a "fireball" is a type of alcoholic beverage. (CA Br., at 32.) However, no person would contend that "Martini" is not generic simply because there are different recipes for Martinis, or that the different Martini recipes have different tastes. All that legally matters is that the "fireball" designation is generic for the goods at issue. Here, the Board explicitly found that the "fireball" designation "names the cocktail/shot/shooter, not a brand" and that "most" of the "fireball" recipes include whiskey and/or cinnamon schnapps (a liqueur), *i.e.*, the claimed class of goods. (Appx59.)

*ii. The Genericness Evidence was "Significant"—Not "Meager"*

Opposer next contends that the evidence before the Board, including the Harvard Bartending Course Books, was inadequate. Opposer argues that sales of the Harvard Bartending Course Books were allegedly "meager." (CA Br., at 36.) But the Board made no such finding. Nor could it have: 25,670 units of the Harvard Book (alone) were sold between 1995 and 2001. And notably, in 2001, Opposer unequivocally admitted "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage"—just as demonstrated by the bartending books and guides. Moreover, as found by the Board, numerous bartending books and websites included "fireball" as a generic name for alcoholic drink, and "most" include whiskey and/or liqueurs. (Appx59.) In fact, the Board found "significant evidence of genericness at the time of registration" because of that fact. (Appx49.)

Second, Opposer contends that the Harvard Books are directed to the training of bartenders—who are not part of the relevant public. (CA Br., at 36–37.) But that misses the point. Harvard trains bartenders to service the relevant consuming public. That training includes how to make a "fireball" when requested by a customer. Harvard would have no need to train bartenders about a "fireball" drink if the relevant consuming public's primary understanding of "fireball" was

not identical to Opposer's unequivocal admission in 2001, that "the FIREBALL name is the generic term for a type of cinnamon flavored alcoholic beverage."

### C. When erroneously evaluating secondary meaning in assessing genericness, the Board failed to apply a heightened and exacting standard.

Opposer agrees that the "heightened and exacting standard" established by *Royal Crown* applies to descriptive terms. (CA Br., at 48.) Opposer also does not dispute that a generic term cannot be rescued with proof of de facto secondary meaning. Thus, logically, there is no need for applying a "heightened and exacting standard" in genericness cases because the Board is legally foreclosed from crediting such evidence.

But this proves how the Board compounded its errors. Not only did the Board credit proof of de facto secondary meaning in assessing genericness (wrongly as detailed above), but it also did so without applying a heighted or exacting standard. For example, Opposer's own highly skewed survey showed a majority (51.1%) of those polled do not consider "fireball" to even be a brand (Appx592-593; Appx2145-2163, at Appx2150). Yet, the Board relied on Opposer's indirect proof (*e.g.*, sales and advertising dollars) to conclude otherwise.

## II. THE COURT SHOULD AFFIRM THE BOARD'S REJECTION OF OPPOSER'S LIKELIHOOD OF CONFUSION CLAIM.

### A. Standard of Review

This Court reviews the Board's legal conclusions de novo and its factual findings for substantial evidence. *Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co., Inc.,* 908 F.3d 1315, 1318 (Fed. Cir. 2018). "Whether a likelihood confusion exists between an applicant's mark and a previously registered mark is determined on a case-by-case basis, aided by application of the thirteen *DuPont* factors." *Id.* at 1319. Whether a likelihood of confusion exists is question of law, which the Court reviews without deference. *Id.* In contrast, each *DuPont* factor presents a question of fact, and the Court reviews those factual findings for substantial evidence. *Id.*

### B. If the Court concludes that the "Fireball" registrations are invalid, Opposer's Cross Appeal is properly denied.

Opposer only has a right to challenge registration of Bullshine's trademark if it owns a valid trademark. If the Court concludes, as it should, that Opposer's registered marks are invalid as generic, then Opposer's Cross Appeal should be denied, as moot, because it will no longer have any right to oppose Bullshine's application.

### C. The Court should affirm because "Fireball" and "Bullshine Firebull" are far too different for confusion to occur.

The Court reviews the overall determination of whether a likelihood of confusion exists de novo, and here one *DuPont* factor—the dissimilarity of the marks—is "dispositive" of the likelihood of confusion issue. *Kellogg Co. v.*

*Pack'em Ent., Inc.*, 951 F.2d 330, 332–33 (Fed. Cir. 1991) (a single *DuPont* factor can be dispositive).[2] "Bullshine Firebull" and "Fireball" are far too different in appearance, sound, meaning, and commercial impression, for a likelihood of confusion to exist.

First: "Obviously BULLSHINE FIREBULL and FIREBALL look and sound different." (Appx61.) Second, BULLSHINE FIREBULL and FIREBALL have "completely distinct meanings." (*Id.*) Opposer's mark conveys "a ball of fire" and/or the flavor of Atomic Fireball candy. In stark contrast, Bullshine's mark "calls forth images of bovine animals." *(Id.*) Indeed, the "Bullshine" portion of "Bullshine Firebull" "is sufficient to avoid consumer confusion." (Appx62-63.) Finally, each term of Bullshine's mark includes "bull." Therefore, each use of "bull" reinforces the other, drawing attention to "bull" and highlighting the differences with Opposer's mark. (Appx64.)

For all of these reasons, the Court can and should affirm the Board's determination of no likelihood of confusion on this single "dispositive" ground.

### D. Opposer proved with survey evidence that "Fireball" is not a famous trademark, and the Board did not err in rejecting the Opposer's claim of fame.

[2] Opposer also complains that the Board did not address the sixth *DuPont* factor. (CA Br., at 71-72.) But that is unnecessary where a single factor is, or several factors are, dispositive, as in this case.

"It is the duty of a party asserting that its mark is famous to clearly prove it." *Leading Jewelers Guild, Inc. v. Ljow Holdings, LLC*, 82 U.S.P.Q.2d 1901 (T.T.A.B. 2007). But, here, while contending "Fireball" is a famous mark, Opposer proved the opposite with survey evidence. "[D]irect [survey] evidence … is preferable to indirect evidence of consumer recognition, from which inferences necessarily have to be drawn." *Bose Corp. v. QSC Audio Prod., Inc.*, 293 F.3d 1367, 1374 (Fed. Cir. 2002) (emphasis added).

Opposer's expert polled only individuals who consumed a shot of liquor in the last six (6) months or expected to consume a shot of liquor in the next six (6) months. (Appx2145-2163, at Appx2153.) The Board found that the polling of that universe improperly skewed the results in Opposer's favor because "Opposer's marketing efforts are heavily bar- and bartender-focused." (Appx45-46.) Yet, despite this highly skewed approach, Opposer's expert found that only 48.9 percent associated "Fireball" with one company or considered it a brand. (Appx41; Appx2149-2150.) Therefore, Opposer's own survey directly proves with "preferable" evidence that Opposer's marketing efforts failed to transform "fireball" into a brand—let alone a famous brand. In fact, a majority of those polled (51.1%) do not consider "Fireball" to be a brand at all, even though those polled were most likely exposed to Opposer's marketing efforts. (Appx2150.)

### E. Substantial evidence supports the Board's finding that "Fireball" is conceptually weak.

The Board utilized evidence of genericness to find that "fireball" was conceptually weak. (Appx58-60.) This provides further proof that the Board erred in rejecting Bullshine's genericness counterclaim (as detailed above), but regardless, it also constitutes substantial evidence to support the Board's finding that "fireball" is conceptually weak. After all, a generic term is the "ultimate in descriptiveness" and can never acquire distinctiveness. *Royal Crown*, 892 F.2d at 1366; *see also Weiss Noodle*, 290 F.2d at 847–48.

Specifically, here, the Board found that Opposer admitted twice that the "fireball" designation was not inherently distinctive at all. (Appx58.) The Board found "[i]n fact" that "fireball" was the name (or part of the name) of "a number of cocktails, shots and shooters, most of which include whisky or liqueur(s) as ingredients." (Appx59.) The Board explained:

> But "fireball" names the cocktail/shot/shooter, <u>not a brand</u> of whisky or liqueur. In other words, "fireball," like "martini" and "margarita," often directly suggests certain alcoholic mixed drinks, <u>rather than the source</u> of particular liquors or liqueurs with which the drinks are made. For example, in the movie "The Guest," when asked if he knew what a "fireball" is, a waiter responded "cinnamon schnapps and Tabasco sauce."

(Appx59) (emphasis added).

These findings prove that the "fireball" designation is generic and not capable of serving as a source identifier. But further to the point here, the Board's findings also confirm that the "fireball" designation is conceptually weak.

Likewise, the Board found "fireball" was conceptually weak because it denotes a flavor. (Appx59.) The Board noted that the "fireball" flavor was used for a wide variety of products; Opposer admitted that its product has the "same flavoring" as Atomic Fireball candy; and media show the relevant public perceives "fireball" to be the flavor of Atomic Fireball candy and Opposer's whisky product. (Appx59.) Based on that, the Board concluded: "This taste/flavor has long been known to many consumers who have tried ATOMIC FIREBALL candy, since before Opposer started selling DR. MCGILLICUDDY'S FIREBALL, and it is a desired cocktail/shot/shooter flavor as evidenced by the number of recipes that attempt to mimic it." (Appx59-60) (emphasis added).

Once again, these findings prove that the "fireball" designation is generic and not capable of serving as a source identifier. But certainly, these findings constitute substantial evidence supporting the Board's finding that the "fireball" designation is conceptually weak.

## III. CONCLUSION

This Court should reverse the Board's determination that the "fireball" designation is not generic because the Board failed to apply the correct legal standard. Based upon the Board's factual findings, the Court should remand with instructions to cancel the '432 Registration and '110 Registration, as generic. That is the only permissible outcome under a proper application of the law given the

Board's findings that "fireball" is the name of an alcoholic drink (not a brand) and a particular spicy, cinnamon and candy-like flavor mimicking the candy.

Finally, the Court should dismiss the cross-appeal, as moot, or alternatively affirm the Board's determination of no likelihood of confusion. Bullshine's trademark is far too different for a likelihood of confusion to exist. "Fireball" is hardly famous, as demonstrated by the record evidence, including Opposer's own survey. Lastly, the Board's findings that "fireball" is generic, both as a name of a cocktail/shot/shooter (not a brand), and as a flavor, fully support the finding that "fireball" is conceptually weak.

Respectfully submitted,

Dated: October 30, 2023

/s/ John R. Horvack, Jr.
John R. Horvack, Jr.
Fatima Lahnin
Damian K. Gunningsmith
Carmody Torrance Sandak
& Hennessey LLP
195 Church Street, 18th Floor
New Haven, CT 06509
Tel.: (203) 777-5501
Fax: (203) 784-3199

*Attorneys for Appellant*

FORM 19. Certificate of Compliance with Type-Volume Limitations | Form 19 July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1682; 2023-1900

**Short Case Caption:** Bullshine Distillery LLC v. Sazerac Brands, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 7,287 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 10/30/2023

Signature: /s/ John R. Horvack, Jr.

Name: John R. Horvack, Jr.

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2023-1682; 2023-1900

**Short Case Caption** Bullshine Distillery LLC v. Sazerac Brands, LLC

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 10/30/2023

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☑ Other: Court's CM/ECF System

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Lauren A. Degnan | Fish & Richardson P.C., 1000 Maine Avenue, S.W., Suite 1000,<br>Washington, DC 20024<br>Email: degnan@fr.com |
| Cynthia Walden | Fish & Richardson P.C., One Marina Park Drive<br>Boston, MA 02210<br>Email: walden@fr.com |
| Jared Hartzman | Fish & Richardson P.C., 1000 Maine Avenue, S.W., Suite 1000<br>Washington, DC 20024<br>Email: hartzman@fr.com |
| Vivian Cheng | Fish & Richardson P.C., 7 Times Square, 20th Floor<br>New York, NY 10036<br>Email: cheng@fr.com |
| Kristin McCallion | Fish & Richardson P.C., 7 Times Square, 20th Floor<br>New York, NY 10036<br>Email: mccallion@fr.com |

☐ Additional pages attached.

Date: 10/30/2023

Signature: /s/ John R. Horvack, Jr.

Name: John R. Horvack, Jr.