**Nos. 23-1682, 23-1900**

# United States Court of Appeals for the Federal Circuit

**BULLSHINE DISTILLERY LLC,**

***Appellant***

***v.***

**SAZERAC BRANDS, LLC,**

***Cross-Appellant***

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, TRADEMARK TRIAL AND APPEAL BOARD IN NO. 91227653

## NON-CONFIDENTIAL REPLY BRIEF OF CROSS-APPELLANT SAZERAC BRANDS, LLC

Lauren A. Degnan
Jared Hartzman
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com
hartzman@fr.com

Cynthia Walden
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070
walden@fr.com

Kristen McCallion
Vivian Cheng
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
McCallion@fr.com, cheng@fr.com

December 20, 2023

*Attorneys for Cross-Appellant Sazerac Brands LLC*

# CERTIFICATE OF INTEREST

Counsel for Cross-Appellant Sazerac Brands, LLC certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Sazerac Brands, LLC**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Sazerac Company, Inc.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **Sazerac Company, Inc.**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: John McCormick, Nancy Ly, Robert O'Connell Jr., David Hosp, Elizabeth Brenckman, Michael Anderson**

   **Cooley LLP: Thomas M. Hadid, Peter J. Willsey, Vincent J. Badolato, Marcus D. Peterson**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **No**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable**

Dated: December 20, 2023

*<u>/s/ Lauren A. Degnan</u>*
Lauren A. Degnan

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iv

I. THE COURT SHOULD REVERSE THE BOARD'S FINDING THAT FIREBALL IS NOT FAMOUS .......... 2

A. Bullshine Fails To Address Sazerac's Arguments About the Board's Faulty Fame Analysis .......... 2

B. This Court May Not Affirm the Board's Findings of No Fame Based on Sazerac's Survey Evidence, on Which the Board Did Not Rely .......... 5

C. The Board's Finding of No Fame Must Be Set Aside .......... 8

II. THE COURT SHOULD VACATE THE BOARD'S FINDING THAT FIREBALL LACKS CONCEPTUAL STRENGTH .......... 9

A. Bullshine Does Not Dispute That the Board Considered Dissimilar Goods in Evaluating Conceptual Strength .......... 9

B. Substantial Evidence Does Not Support the Board's Finding That FIREBALL Is Conceptually Weak .......... 10

III. THE COURT SHOULD VACATE THE BOARD'S FINDING OF NO LIKELIHOOD OF CONFUSION .......... 12

A. The Board Did Not Find That a Single *DuPont* Factor Was Dispositive of Likelihood of Confusion .......... 12

B. Bullshine Ignores the Board's Legal Error in Failing To Consider the Sixth *DuPont* Factor .......... 15

C. The Board's Finding of No Likelihood of Confusion Was Infected by the Board's Other Errors .......... 16

CONCLUSION .......... 17

CERTIFICATE OF SERVICE AND FILING .......... 19

CERTIFICATE OF COMPLIANCE ..................................................................... 20

CERTIFICATE OF CONFIDENTIAL INFORMATION ...................................... 21

Page 4 has been redacted in this non-confidential version of Sazerac's Reply Brief. The material omitted on page 4 includes admissions from a Bullshine business plan that has been designated by Bullshine as confidential under the protective order.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bose Corp. v. QSC Audio Products, Inc.*,
293 F.3d 1367 (Fed. Cir. 2002) ....................2, 3, 9

*CardSoft (assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*,
807 F.3d 1346 (Fed. Cir. 2015) ....................1, 3, 10

*Drackett Co. v. H. Kohnstamm & Co.*,
404 F.2d 1399 (C.C.P.A. 1969) ....................11

*In re Guild Mortg. Co.*,
912 F.3d 1376 (Fed. Cir. 2019) ....................15, 16

*Kellogg Co. v. Pack'em Enterprises, Inc.*,
951 F.2d 330 (Fed. Cir. 1991) ....................13

*Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*,
963 F.2d 350 (Fed. Cir. 1992) ....................13, 16

*In re MBNA Am. Bank, N.A.*,
340 F.3d 1328 (Fed. Cir. 2003) ....................11

*Nat'l Data Corp. v. Comput. Sys. Eng'g, Inc.*,
940 F.2d 676, 1991 WL 124920 (Fed. Cir. 1991) ....................11

*Omaha Steaks International, Inc. v. Greater Omaha Packing Co.*,
908 F.3d 1315 (Fed. Cir. 2018) ....................2, 3, 9, 10

*In re Sang Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ....................13

*Sec. & Exch. Comm'n v. Chenery Corp.*,
332 U.S. 194 (1947) ....................1, 5, 12, 15

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................15

*Sure-Fit Products Co. v. Saltzon Drapery Co.*,
254 F.2d 158 (C.C.P.A 1958) .......................................................................14

*United Trademark Holdings, Inc. v. Disney Enters., Inc.*,
No. 2021-1056, 2022 WL 558247 (Fed. Cir. Feb. 24, 2022) .............................11

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition § 11:64 (5th ed.) ..................11

Bullshine fails to address Sazerac's arguments regarding the Board's legal errors in: (1) its flawed analysis of fame; (2) considering dissimilar goods in evaluating conceptual strength; and (3) failure to consider the sixth *DuPont* factor. It thus "effectively conceded" these errors in the Board's decision. *See CardSoft (assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1353 (Fed. Cir. 2015) (finding that appellee "effectively conceded" argument in appellant's brief by failing to respond).

As to the few issues Bullshine attempts to address, Bullshine improperly relies on Sazerac's survey as an alternative basis to affirm the Board's finding of no fame. However, the Board did not rely on this survey for its findings of no fame, which bars this Court from affirming on this basis. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("*Chenery*") ("[T]he court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.").

Similarly, Bullshine's arguments regarding the conceptual strength of FIREBALL and likelihood of confusion are both based on findings the Board never made. Contrary to Bullshine's assertion, the Board's findings do not prove that FIREBALL is generic and thus conceptually weak. As discussed in Sazerac's red brief, the Board held the exact opposite: ***FIREBALL is not generic***. Appx51; Sazerac's Red Brief ("RB") 17-52. The Board also did not find that the

dissimilarity of the marks, or any other single *DuPont* factor, is dispositive on the issue of likelihood of confusion. Appx66. Even if the Board had found one factor dispositive, however, such finding would have to be vacated because the Board's erroneous finding that FIREBALL is not famous affected its evaluation of the similarity of the marks and other *DuPont* factors.

Therefore, this Court should reverse the Board's finding of no fame and remand Sazerac's likelihood of confusion claim so that the Board may appropriately reassess the *DuPont* factors taking into consideration the fame of the FIREBALL mark.

# I. THE COURT SHOULD REVERSE THE BOARD'S FINDING THAT FIREBALL IS NOT FAMOUS

## A. Bullshine Fails To Address Sazerac's Arguments About the Board's Faulty Fame Analysis

Sazerac argued that the Board legally erred in finding that FIREBALL had not achieved fame by misconstruing Federal Circuit precedent in *Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002), and ignoring *Omaha Steaks International, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1319 (Fed. Cir. 2018). RB 57-59. Specifically, Sazerac argued that the Board erred in finding that FIREBALL had not achieved fame despite being "commercially strong" due to an alleged lack of "context" for advertising and sales figures or how such figures compare with those of other brands of whiskey and

liqueurs. RB 55-57. As explained in Sazerac's red brief, both *Bose* and *Omaha Steaks* hold that comparative sales figures or market share data is not required. *Omaha Steaks*, 908 F.3d at 1320; *Bose*, 293 F.3d at 1375.

Bullshine fails to address either case, or the fact that Sazerac's sales and advertising figures actually exceed those found sufficient for fame in *Bose*. Bullshine thus effectively concedes that the Board legally erred in finding that FIREBALL is not famous due to a lack of "context" for its advertising and sales figures, which is not required under this Court's precedent. *See CardSoft*, 807 F.3d at 1353 (finding that appellee "effectively conceded" argument in appellant's brief by failing to respond).

Bullshine also ignores Sazerac's argument that, given the Board's factual findings, Sazerac did in fact provide context for its sales and advertising data. RB 59-63. Sazerac detailed the way in which it provided evidence of widespread critical attention including through reviews and press in popular media, widespread critical acclaim through awards, popular cultural references on television, in a song, and in recipes, the varied types of advertisements and promotions Sazerac used to increase sales of FIREBALL whisky, and nearly a million followers on Facebook. *Id.* Yet, Bullshine does not address any of this evidence or the Board's findings based thereon. *See generally* Bullshine's Yellow Brief ("YB") 6-7, 28-34.

**CONFIDENTIAL INFORMATION HAS BEEN REMOVED FROM THIS PAGE**

Likewise, Bullshine is wholly silent about the additional evidence of fame that Sazerac identified (*see* RB 63-66) which the Board improperly failed to consider:

- Bullshine's own admissions that FIREBALL whisky is "the [redacted]," Appx1480, a "[redacted]" with an estimated [redacted] of the market, Appx1487-1488, and "the [redacted] selling flavored whiskey in the U.S.," Appx1490;

- Awards FIREBALL whisky won in tasting and packaging design competitions, Appx4594-4603;

- Major publications describing FIREBALL as a top selling or popular brand, Appx3827; Appx3816; Appx3820-3821; Appx3836; Appx3864-3866; Appx3881-3882;

- Sazerac's co-promotion and co-branding partnerships with other alcohol brands and national restaurants, Appx659; Appx1159; Appx1160-1161; Appx4515; Appx4614-4618;

- Sell sheets and other point-of-sale items featuring the FIREBALL mark used in Sazerac's advertising and marketing efforts, Appx648-650; Appx707; Appx925-926; Appx939-940; Appx943; Appx945-946; Appx958; Appx1007; Appx1109-1118; Appx4506-4509; Appx4558-4561; Appx4564-4572; Appx4574; and

- Evidence of the dedicated FIREBALL fanbase Sazerac has cultivated over the years, Appx656-657; Appx1054; Appx1082-1129.

RB 62-66. Through its silence, Bullshine does not dispute that the Board erred in failing to consider this additional record evidence of fame. *See generally* YB 6-7, 28-34.

### B. This Court May Not Affirm the Board's Findings of No Fame Based on Sazerac's Survey Evidence, on Which the Board Did Not Rely

Rather than addressing the Board's legal errors and findings showing fame under the proper legal standard, Bullshine highlights a survey that Sazerac submitted to the Board, on which the Board did not rely. *See* YB 30-31. Indeed, the Board explicitly refrained from considering this survey evidence when reaching its (flawed) conclusion that FIREBALL is not famous. Appx47 (finding survey did "not have significant probative value, beyond being cumulative corroboration of the evidence that FIREBALL is commercially strong"); *see also* Appx55-58 (evaluating commercial strength and fame without relying on the survey as evidence of no fame).[1] This Court cannot affirm the Board's findings of no fame based on survey evidence upon which the Board never relied. *See Chenery*, 332 U.S. at 196.

Even if this Court were to consider Bullshine's arguments about Sazerac's survey, it should reject Bullshine's erroneous assertion that the survey somehow proves that FIREBALL is not "a brand." YB 31. First, Bullshine misconstrues the survey in arguing that 48.9% of respondents associated FIREBALL "with one

---

[1] Although the Board did not rely on the survey to find no fame, it did note that the "survey tends to support [Sazerac's] evidence of commercial strength to some extent." Appx57.

company ***or*** considered it a brand," YB 31.[2] This is wrong. The 48.9% cited by Bullshine is the ***net*** total "percent of consumers [who] associate FIREBALL with products made by one company ***and*** think that FIREBALL is a brand name." Appx2150. Additionally, and importantly, this net total percentage reflects a 12.7% reduction that attempts to capture any guessing or survey "noise" as measured through the use of a control group. Without that reduction, the survey reflects that 61.6% of the respondents in the test group indicated that FIREBALL is "a product made by one company ***and*** is a brand name." Appx2150; Appx2161.[3]

Second, Bullshine further misconstrues the survey in arguing that 51.1% of those polled do not consider FIREBALL to be a brand. YB 31. Bullshine's oversimplified math ignores that one cannot simply subtract 48.9%—a figure that represents the net percentage (after a reduction of 12.7% to attempt to capture survey noise) of respondents who associate FIREBALL with one company ***and*** considered it a brand—from 100% to obtain the percentage of those who do not consider FIREBALL to be a brand. Further, Bullshine ignores both the impact of Sazerac's expert's efforts to control for survey noise, or guessing, and that respondents also had the option to answer "Don't know / No opinion." Appx2150;

---

[2] All emphasis is added unless noted otherwise.

[3] Notably, 74.8% of test respondents indicated that FIREBALL is an alcoholic beverage made by one brand or company and, of these respondents, nearly 60% of them identified FIREBALL or Sazerac as that one brand or company. Appx2149.

Appx2157-2158; Appx2161. Furthermore, Sazerac's expert explained that her efforts to correct the results for noise "likely overestimate survey 'noise.'" Appx2160-2161.

Third, in discussing the survey, the Board expressly noted that "there is ***no question that FIREBALL cinnamon whisky enjoys significant 'brand strength***'" and pointed out that the "Applicant [Bullshine] concedes as much, testifying that FIREBALL is a strong brand because it 'sold a lot.'" Appx47 (citing Appx1230-1231). That is why, according to the Board, the survey actually corroborated "the evidence that FIREBALL is commercially strong." Appx47.

Beyond the survey, the record contains substantial evidence supporting the Board's finding that FIREBALL is commercially strong and has significant brand strength. Appx56 ("[Bullshine] concedes, [Appx1230-1231], and we agree, that [Sazerac's] mark is commercially strong."). In making this finding, the Board relied on FIREBALL whiskey's rapid rise in popularity shortly after Sazerac updated its branding for the product, as well as "significant media attention at the time[,]" both attributable at least in part to Sazerac's "aggressive and extensive marketing efforts." Appx56-57 (citing Appx646-648; Appx661; Appx654-655; Appx796-798; Appx804-908; Appx3783-3784; Appx3815-3905). Bullshine's argument to the contrary ignores this evidence and the Board's finding.

The Court should reject Bullshine's invitation to affirm the Board's finding of no fame on grounds the Board itself did not adopt.

### C. The Board's Finding of No Fame Must Be Set Aside

The findings the Board made show that Sazerac's evidence of widespread critical attention and acclaim is sufficient to find fame under the proper legal standard. RB 59-63; *see also* Appx19 (noting that "many shot and cocktail recipes call for [Sazerac's] FIREBALL whisky, specifically and by name"); Appx25 (noting press coverage from national publications and finding that Sazerac's "product has received substantial unsolicited media attention"); Appx26 (discussing Sazerac's FIREBALL brand ambassador program and FIREBALL branded novelty items and other promotional materials provided to bars); Appx27 (noting that Sazerac's "'Official Bartender Loyalty Program' has apparently been successful because in 2015 and 2016 FIREBALL won a 'Most Recommended Brand Award' in the 'Overall Spirit' and 'Shot/Shooter' categories," and describing celebrity endorsers, and mentions of FIREBALL in popular culture); Appx57 (finding "FIREBALL's 'almost 1 million followers' on Facebook" to be "evidence of commercial strength").

Given the Board's findings, which are supported by substantial evidence, when the proper standard for "fame" is applied, "only one conclusion can be reached regarding the fame of the [FIREBALL] mark[]"; it is famous and "thus

entitled to broad protection." *Bose*, 293 F.3d at 1376. Therefore, this Court should reverse the Board's finding to the contrary. *See id.*

At a minimum, the Court should vacate the Board's decision and remand for the Board to consider the evidence under the proper legal standard. *Omaha Steaks*, 908 F.3d at 1322 (vacating and remanding). Furthermore, should the Board remand the issue for the Board to address under the proper legal standard, it should instruct the Board on remand to take into account the additional evidence identified above (and in Sazerac's red brief, RB 63-66).

## II. THE COURT SHOULD VACATE THE BOARD'S FINDING THAT FIREBALL LACKS CONCEPTUAL STRENGTH

### A. Bullshine Does Not Dispute That the Board Considered Dissimilar Goods in Evaluating Conceptual Strength

Sazerac requested vacatur of the Board's finding that FIREBALL is "highly suggestive," Appx58-60, because the Board legally erred in relying on third-party uses for wildly dissimilar goods, such as popcorn, ice cream, and beef jerky, Appx59, despite "the controlling inquiry" being "the extent of third-party marks in use on 'similar' goods or services," *Omaha Steaks*, 908 F.3d at 1324.

Here, too, Bullshine entirely ignores Sazerac's argument. *See generally* YB 6-7, 28-34. Bullshine fails to dispute that "similar" goods and services are most relevant when evaluating the strength of a mark. Bullshine likewise identifies no evidence, cited by the Board or otherwise, that products the Board considered such

as popcorn, ice cream, beef jerky, and liquid flavorings are "similar to" the goods at issue here—whisky and liqueur. *Id.* Accordingly, Bullshine "effectively conceded" the Board's legal error. *See CardSoft*, 807 F.3d at 1353.

Because the Board based its finding that FIREBALL is "highly suggestive of the taste and flavor of Opposer's 'sweet/spicy cinnamon'-flavored whisky/liqueur" in part on third-party uses on dissimilar goods, Appx58-59, this Court should vacate the Board's finding of conceptual weakness. *See Omaha Steaks*, 908 F.3d at 1326.

### B. Substantial Evidence Does Not Support the Board's Finding That FIREBALL Is Conceptually Weak

The Court should also vacate the Board's conceptual weakness finding for the independent reason that substantial evidence does not support it. Specifically, the Board found that FIREBALL is "highly suggestive" due to decades-old statements by Sazerac in a USPTO filing and federal court proceeding and cocktail/shot/shooter recipes that have inconsistent ingredients and flavors. Appx58-59. As explained, Sazerac's prior statements are irrelevant, for example, because the Board must assess likelihood of confusion now, when Bullshine's registration is under consideration, not at the time of these two-decade old filings. RB 68-69.

Regarding the recipes, the Board (1) wrongly focused on "alcoholic mixed drinks," Appx59, rather than assessing whether FIREBALL hints at the

ingredients, qualities, or characteristics of the good in question—i.e., whisky and liqueur—as required under the proper legal test,[4] and (2) correctly found that "precious few" of the same recipes considered in finding FIREBALL suggestive "come nearly as close to the ATOMIC FIREBALL flavor as does [Sazerac's] FIREBALL cinnamon whisky" and that "many recipes . . . would not replicate the . . . cinnamon whisky[] flavor." RB 70-71 (quoting Appx42 n.13; Appx49). Bullshine notably fails to dispute (or even address) these arguments.[5]

Instead, to try to justify the Board's conceptual weakness finding, Bullshine reiterates its false assertion that the Board found that FIREBALL "is generic." YB 32-33 (arguing the Board's findings that "fireball" is used as the name or part of the name of third-party cocktails, shots, and shooters, and to "denote the flavor of

---

[4] *See In re MBNA Am. Bank, N.A.*, 340 F.3d 1328, 1332 (Fed. Cir. 2003) ("[I]f a mark requires imagination, thought, and perception to arrive at the qualities or characteristics of the goods [or services], then the mark is suggestive." (internal citations omitted)); 2 McCarthy on Trademarks and Unfair Competition § 11:64 (5th ed.) (noting that a "suggestive" term must hint at the "ingredients, qualities or characteristics of the product").

[5] Bullshine also fails to address any of the factually distinct cases finding highly suggestive marks cited by Sazerac. *See, e.g.*, *United Trademark Holdings, Inc. v. Disney Enters., Inc.*, No. 2021-1056, 2022 WL 558247, at *3 (Fed. Cir. Feb. 24, 2022) (affirming finding that TINKER BELL was highly suggestive of ***Tinker Bell*** doll); *Nat'l Data Corp. v. Comput. Sys. Eng'g, Inc.*, 940 F.2d 676, 1991 WL 124920, at *2 (Fed. Cir. 1991) (affirming Board's dismissal of opposition based on no likelihood of confusion where "DATA" was "highly suggestive" for "electronic ***data*** processing services"); *Drackett Co. v. H. Kohnstamm & Co.*, 404 F.2d 1399, 1400 (C.C.P.A. 1969) (affirming finding that "'ENDUST' and 'DUSTOP' are highly suggestive terms which were [] adopted to indicate that the products sold thereunder are intended to ***end or stop dust***").

ATOMIC FIREBALL candy in products," Appx 59, "prove that the 'fireball' designation is generic and not capable of serving as a source identifier"). However, ***the Board never found that FIREBALL is generic***. To the contrary, the Board rejected both of Bullshine's subcategory and flavor theories of genericness. Appx49-51; *see* RB 20-26 (refuting Bullshine's characterization of the Board's findings).

Bullshine cannot show that substantial evidence supports the Board's findings on conceptual strength by relying on a finding of genericness that the Board simply did not make. The Court should vacate the Board's conceptual weakness finding for lack of substantial evidence.

## III. THE COURT SHOULD VACATE THE BOARD'S FINDING OF NO LIKELIHOOD OF CONFUSION

### A. The Board Did Not Find That a Single *DuPont* Factor Was Dispositive of Likelihood of Confusion

Sazerac argued that the Board's failure to find fame infected the Board's finding of likelihood of confusion, including the Board's weighing of the first *DuPont* factor: similarity of the marks. RB 72-73. Bullshine did not address this argument and instead argues that the dissimilarity of the marks is dispositive. YB 29. However, the Board never held that the first *DuPont* factor was dispositive in this case, which prevents this Court from affirming the Board's decision on this basis. *Chenery*, 332 U.S. at 196.

Specifically, after discussing its findings of (1) identical goods, (2) overlapping channels of trade, (3) commercial strength of the FIREBALL mark, (4) conceptual weakness of the FIREBALL mark, and (5) differences between the parties' marks, the Board cited *Kellogg Co. v. Pack'em Enterprises, Inc.*, including the following quotation in the case's parenthetical: "We know of no reason why, in a particular case, a single *duPont* factor may not be dispositive," 951 F.2d 330, 332-33 (Fed. Cir. 1991). Appx66. These statements do not constitute a finding by the Board that any single factor was dispositive, let alone identify such a factor. To the contrary, had the Board made such a determination, it would have been obligated to articulate its decision and reasoning clearly. *See In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (explaining an agency must "articulate[] the reasons for that decision" and "explain its application of the law to the found facts" so that the reviewing court may "perform meaningful review within the strictures of the APA"). Because the Board did not do so here, it would be improper to deduce, as Bullshine appears to have done, that the Board found any single *DuPont* factor dispositive.

Even if the Board had found one factor dispositive, vacatur would be necessary because the Board's erroneous finding that FIREBALL is not famous affected its evaluation of the similarity of the marks. *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 354 (Fed. Cir. 1992) (noting that a famous

mark receives a wider scope of protection and plays a dominant role in the likelihood of confusion analysis). For example, in assessing the similarity of the marks, Board held that, even if "FIREBULL in [Bullshine's] mark may call to mind [Sazerac's] mark," FIREBALL is "***not distinctive enough*** for there to be a likelihood of confusion between the marks[.]" Appx63. In reaching this conclusion, the Board relied on *Sure-Fit Products Co. v. Saltzon Drapery Co.*, 254 F.2d 158 (C.C.P.A 1958)—a case involving a ***descriptive*** mark and a record with no evidence to indicate the mark was not still in the category of a weak mark. *See* RB 74-75 (distinguishing the facts and record here with those in *Sure-Fit*). Unlike the mark in *Sure-Fit*, FIREBALL is inherently distinctive, Appx58, and the record supports the Board's finding of commercial strength, *see, e.g.*, Appx24-27; Appx56-58; RB 74 (citing RB 55-66). Bullshine notably fails to address these distinctions. *See* YB 29-30.

The Board also relied on the alleged lack of fame in weighing the FIREBALL mark's commercial strength against its alleged conceptual weakness: "FIREBALL mark's conceptual weakness essentially 'cancels out' the mark's commercial strength," resulting in the Board's ultimate finding that "the mark is entitled to no more than a normal scope of protection." Appx60. Had the Board evaluated FIREBALL's fame under the proper legal standard and considered all the relevant evidence, no such cancelling out could have occurred. The Board's

conclusion that FIREBALL is "not distinctive enough," Appx63, was thus also tainted by its error in canceling out the mark's commercial strength.

### B. Bullshine Ignores the Board's Legal Error in Failing To Consider the Sixth *DuPont* Factor

Although Bullshine acknowledges the Board's failure to address the sixth *DuPont* factor (the number and nature of similar marks in use on similar goods), it responds only in a footnote that the Board committed no error because "a single factor is, or several factors are, dispositive." YB 30 n.2. Despite this assertion as to the possibility that several factors are dispositive, Bullshine's argument in the text relies on a single factor, namely, the difference between the marks. YB 29-30. Assuming this argument is even preserved,[6] as explained above, the Board did not find that the difference between the marks or any other single factor was dispositive, which prevents this Court from affirming on that basis. *Chenery*, 332 U.S. at 196.

Even where the Board determines that a single factor is dispositive, such a decision must be made only ***after*** considering all *DuPont* factors on which evidence and argument are presented. *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379 (Fed. Cir. 2019); *see also* Appx54 (citing same). In addition to ignoring this precedent, Bullshine fails to address (1) the evidence Sazerac presented under the

---

[6] *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (explaining "arguments raised in footnotes are not preserved").

sixth *DuPont* factor, RB 71-72 (citing Appx663; Appx1433 (RFA 49); Appx1211 (149:19-22); Appx1226 (89:5-14); Appx1293-1294 (59:20-60:10); Appx1370 (268:5-14)); (2) the Board's findings that "[t]here is no evidence that any of [Sazerac's] competitors in the whisky or liqueur fields used the term FIREBALL at the time of registration," Appx50-51; and (3) that Sazerac has "successfully enforced its asserted rights in FIREBALL against many of the third-party users of the term[,]" Appx51.

Because the Board did not consider this evidence relevant to the sixth *DuPont* factor, this Court should vacate and remand the decision. *Guild Mortg. Co.*, 912 F.3d at 1379 (vacating and remanding where "Board failed to consider relevant argument and evidence directed to *DuPont* factor 8").

### C. The Board's Finding of No Likelihood of Confusion Was Infected by the Board's Other Errors

The Board's failure to find fame—despite overwhelming evidence of commercial renown—influenced its weighing of the fifth *DuPont* factor (strength of the mark), the first *DuPont* factor (similarity of the marks), and its ultimate conclusion of no likelihood of confusion. When a mark is famous, it "plays a dominant role" in the likelihood of confusion analysis, as a very strong mark receives a wider scope of protection. *Kenner Parker*, 963 F.2d at 352, 354. Here, the Board considered the likelihood of confusion issue against the erroneous backdrop that FIREBALL was not famous. Appx58-66.

In light of the Board's errors, remand is necessary for the Board to reweigh the *DuPont* factors, including: (1) giving FIREBALL the weight due to a famous mark when evaluating the first factor (similarity of the marks) and balancing all of the *DuPont* factors; (2) evaluating the conceptual strength of FIREBALL without referencing dissimilar goods; and (3) considering the previously ignored sixth factor (the number and nature of similar marks in use on similar goods).

## CONCLUSION

For the reasons stated above and in Sazerac's red brief, this Court should reverse the Board's finding that FIREBALL is not famous, and vacate and remand the Board's dismissal of Sazerac's opposition to Bullshine's registration.

Dated: December 20, 2023

Respectfully submitted,

*/s/ Lauren A. Degnan*

Lauren A. Degnan
Jared Hartzman
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com
hartzman@fr.com

Cynthia Walden
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070
walden@fr.com

Kristen McCallion
Vivian Cheng
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
McCallion@fr.com
cheng@fr.com

***Attorneys for Cross-Appellant Sazerac Brands, LLC***

**CERTIFICATE OF SERVICE AND FILING**

I certify that on December 20, 2023, I electronically filed the foregoing **NON-CONFIDENTIAL REPLY BRIEF** of Cross-Appellant Sazerac Brands, LLC using the Court's CM/ECF filing system. Counsel for appellant were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Lauren A. Degnan*
Lauren A. Degnan

# CERTIFICATE OF COMPLIANCE

The **NON-CONFIDENTIAL REPLY BRIEF** of Cross-Appellant is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 3791 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 Point.

Dated: December 20, 2023

*/s/ Lauren A. Degnan*
Lauren A. Degnan

## CERTIFICATE OF CONFIDENTIAL INFORMATION

Cross-Appellant Sazerac Brands, LLC's **NON-CONFIDENTIAL REPLY BRIEF** complies with Federal Circuit Rule 25.1(d)'s limitations on the amount of material that can be marked confidential in motions, responses, replies, or briefs. This brief contains 0 unique words (including numbers) marked confidential that were not marked confidential in Sazerac Brands, LLC's Principal and Response Brief, which does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A) & (C).

Dated: December 20, 2023

*/s/ Lauren A. Degnan*
Lauren A. Degnan