# United States Court of Appeals for the Federal Circuit

---

**BULLSHINE DISTILLERY LLC,**
*Appellant*

**v.**

**SAZERAC BRANDS, LLC,**
*Cross-Appellant*

---

2023-1682, 2023-1900

---

Appeals from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91227653.

---

Decided: March 12, 2025

---

JOHN RICHARD HORVACK, JR., Carmody Torrance Sandak & Hennessey LLP, New Haven, CT, argued for appellant. Also represented by DAMIAN KEVIN GUNNINGSMITH, FATIMA LAHNIN.

LAUREN ANN DEGNAN, Fish & Richardson P.C., Washington, DC, argued for cross-appellant. Also represented by JARED HARTZMAN; VIVIAN CHENG, KRISTEN MCCALLION, New York, NY; CYNTHIA WALDEN, Boston, MA.

---

Before MOORE, *Chief Judge*, REYNA and TARANTO, *Circuit Judges*.

MOORE, *Chief Judge*.

Bullshine Distillery LLC (Bullshine) appeals a decision of the Trademark Trial and Appeal Board (Board) finding Sazerac Brands, LLC's (Sazerac) FIREBALL marks are not generic. *Sazerac Brands, LLC v. Bullshine Distillery LLC*, No. 91227653, 2023 WL 2423356, at *22 (Mar. 6, 2023). Sazerac cross-appeals the Board's determination there is no likelihood of confusion under Section 2(d) of the Lanham Act (codified at 15 U.S.C. § 1052(d)) between the FIREBALL marks and Bullshine's proposed BULLSHINE FIREBULL mark. *Id.* at *30. For the following reasons, we affirm.

BACKGROUND

In 2015, Bullshine applied to register the mark BULLSHINE FIREBULL on the Principal Register in connection with "[a]lcoholic beverages except beers" in International Class 33. J.A. 67. Sazerac filed a Notice of Opposition, alleging likelihood of confusion with several of its marks:

| **Mark** | **Reg. No.** | **Category** |
|---|---|---|
| FIREBALL | 2852432 | liqueurs |
| FIREBALL | 3550110 | whisky |
| FIREBALL | 3734227 | whiskey |

*Sazerac*, 2023 WL 2423356 at *1. In its operative Third Amended Answer and Counterclaims, Bullshine denied its BULLSHINE FIREBULL mark would cause a likelihood of confusion and sought cancellation of Sazerac's registrations under Section 14 of the Lanham Act (codified at 15 U.S.C. § 1064) because, pertinent to this appeal, the term "fireball" is a "'generic name for a [whiskey or liqueur/schnapps-based] common alcoholic drink' containing 'a spicy flavoring element such as cinnamon or hot sauce.'" *Id.* (alteration in original).

The Board found that "fireball" was not generic either at the time of registration of Sazerac's marks or at the time of trial. *Id.* at *22. The Board also determined the BULLSHINE FIREBULL mark was not likely to cause confusion with Sazerac's marks. *Id.* at *30. Specifically, the Board found Sazerac's FIREBALL mark is commercially strong but conceptually weak, *id.* at *26, the marks are dissimilar when considered in their entireties, *id.* at *29, the goods were purchased without great care, *id.*, and Bullshine did not act in bad faith in choosing its mark, *id.* Accordingly, the Board denied both Bullshine's counterclaims and Sazerac's opposition to Bullshine's mark. *Id.* at *30. Both parties appeal. We have jurisdiction pursuant to 15 U.S.C. § 1071 and 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

### I. Bullshine's Appeal

Bullshine argues on appeal: (1) the Board applied the incorrect legal standard in finding "fireball" was not generic, and (2) the Board erred in finding FIREBALL was not generic at the times of registration. Bullshine Opening Br. 15, 22.

#### A.

Bullshine argues the Board applied the incorrect legal standard in finding "fireball" is not a generic term. Bullshine Opening Br. 15–21, 36–38. According to

Bullshine, "fireball" was a generic term prior to Sazerac's registration of FIREBALL, which should have prevented Sazerac's registration, and the Board erred by considering evidence of secondary meaning to rescue the term from genericness.[1] *See, e.g.*, *id.* at 18. Whether the Board applied the correct legal standard is a question of law we review de novo. *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1364 (Fed. Cir. 2018).

The parties disagree on the appropriate time period for assessing whether a mark was generic such that it could not be registered in the first instance. This is an issue of first impression. Bullshine argues if a term is generic at any time prior to registration, regardless of how it is understood at the time of registration, it remains generic for all time and cannot be registered. Bullshine Br. 18; Oral Arg. at 3:43–57.[2] Sazerac argues the correct time period to assess if a mark was generic is at the time of registration. Sazerac Br. 20. We agree with Sazerac.

We first look to the language of Section 2(e) of the Lanham Act (the Act). *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). A mark cannot be registered which "when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them." 15 U.S.C. § 1052(e). The term "descriptive" encompasses generic terms because a generic term is the "ultimate in descriptiveness," *Royal Crown*, 892 F.3d at 1366, and is "ineligible for federal trademark registration," *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 551 (2020) (*Booking.com*). The statute prevents registration of a generic term because it would deceive consumers as to

---

[1] Bullshine does not appeal the Board's finding with respect to genericness at the time of trial.

[2] Available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1682_12052024.mp3.

the origin of a good. This inquiry necessarily looks to what consumers would think at the time of registration. *See Booking.com*, 591 U.S. at 560 ("[W]hether a term is generic depends on its meaning to consumers.").

The statutory scheme of the Lanham Act supports this interpretation. The Act not only prevents registration of generic terms, but also provides for cancellation of marks "[a]t any time," if they become generic. 15 U.S.C. § 1064(3).[3] Even a mark that has attained incontestable status can still be challenged on the basis of genericness. 15 U.S.C. § 1065(4). This demonstrates Congress' understanding that whether a term is generic is an inquiry that changes over time, and therefore Bullshine's argument that once generic always generic, no matter how far removed from the time-period of genericness, is inconsistent with the statue.

This interpretation is consistent with the purposes of the Act. The Act established the federal trademark system to "promote competition and the maintenance of product quality." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985). The Act aims to "protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get." *Booking.com*, 591 U.S. at 552 (quoting S. Rep. No. 79-1333, at 3 (1946)). The Act "is incompatible with an unyielding legal rule that entirely disregards consumer perception." *Id.* at 560. The public is not protected by looking to what

[3] Sazerac makes a passing argument as to whether cancellation under 15 U.S.C. § 1064(3) is an available remedy in a non-genericide case. Sazerac Br. 19. Because Sazerac did not raise this issue below, it is waived on appeal. *In re Baxter Intern., Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (we generally do not consider arguments not raised to the Board).

consumers thought of a term ten, fifty, or one-hundred years ago. It is the impression of consumers at the time of the mark's registration—whether they would be confused or misled by a mark—that the Act aims to protect.

Our caselaw is consistent with this holding. In 1966, our predecessor court affirmed the denial of registration for the term "the pill," by finding "substantial evidence that the term is the common descriptive name of an oral contraceptive pill at the time the issue of registrability was under consideration." *Application of G. D. Searle & Co.*, 360 F.2d 650, 656 (C.C.P.A. 1966). This understanding is baked into our test for genericness: "[T]he Board must first identify the genus of goods or services at issue, and then assess whether the public understands the mark, as a whole, to refer to that genus." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 966 (Fed. Cir. 2015) (emphasis omitted); *see also id.* at 969 ("the relevant public's perception is the primary consideration in determining whether a term is generic"); *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640–41 (Fed. Cir. 1991) ("this court has stated that whether a term is entitled to trademark status turns on how the mark is understood by the purchasing public"). The "purchasing public" is necessarily contemporaneous with the time of registration.

Bullshine argues *Weiss Noodle Co. v. Golden Cracknell & Specialty Co.*, 290 F.2d 845, 848 (C.C.P.A. 1961), held no matter how much time has passed between the point of a genericness finding and the time registration is sought, a term cannot be registered. *See, e.g.*, Bullshine Opening Br. 16–17. We do not agree. In *Weiss Noodle*, Appellants attempted to trademark "haluska," the Hungarian word for noodles. 290 F.2d at 847. Our predecessor court held that "the name of a thing is the ultimate in descriptiveness," and no amount of secondary meaning would make the common name of a product registerable. *Id.* at 847–48. In its determination, the court looked to the public's understanding at the time registration was sought. *Id.* at 846 (looking

to Hungarian-English dictionaries and witness testimony of how the term is used and pronounced). The mark was denied registration because it described the good it was used for at the time of registration, just in another language. *Id.* at 847–48; *see Booking.com*, 591 U.S. at 554 ("The name of the good itself (*e.g.*, 'wine') is incapable of 'distinguish[ing] [one producer's goods] from the goods of others' and is therefore ineligible for registration." (citing 15 U.S.C. § 1052)). This is consistent with our holding the proper time to evaluate whether a term is generic in the first instance is at the time of registration.

The Board applied the correct legal standard. The Board first identified the genus of goods at issue and the relevant public. *Sazerac*, 2023 WL 2423356 at *13; *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990 (Fed. Cir. 1986). The Board then looked at the evidence of what the relevant consumers thought of the term "fireball" at the times of registration for the respective marks. *Sazerac*, 2023 WL 2423356 at *20 ("we consider the evidence from the time each registration was sought—2001 for the '432 Registration and 2008 for the '110 Registration"); *id.* at *20–21 (analysis under the heading "The Time of Registration"). This is a proper application of the legal standard.

B.

Bullshine argues the Board erred in finding FIREBALL was not generic at the times of registration. Whether a mark is generic is a question of fact. *Royal Crown*, 892 F.3d at 1364. We review the Board's factual findings for substantial evidence. *Id.* at 1365.

Substantial evidence supports the Board's finding that FIREBALL was not generic at the times of registration. The Board evaluated evidence in the record supporting Bullshine's argument of genericness, such as recipes for "fireball" cocktails/shots/shooters that included whisky or cinnamon liqueur and Tabasco sauce, Sazerac's failure to

enforce its rights in the FIREBALL marks against third parties, and Sazerac's argument in federal district court in 2001 that FIREBALL is a generic term. *Sazerac*, 2023 WL 2423356 at *4–20. The Board, however, found a preponderance of the evidence pointed against a finding of genericness. *Id.* at *20–21. The Board identified recipes relied upon by Bullshine to show "fireball" was a generic term for a drink using whiskey and liqueur to replicate the taste of ATOMIC FIREBALL candy, a "spicy and sweet cinnamon candy product" sold beginning in 1954. *Id.* at *4, *21. However, many of those fireball drink recipes did not use whiskey, liqueur, or even taste like the Fireball candy or FIREBALL cinnamon whisky. *Id.* at *21. The Board noted the majority of the recipes were from specialized publications and therefore did not evidence what the relevant consumer base, consumers of whisky and liqueurs, associated with the term. *Id.* The Board also found that FIREBALL was known by the relevant consumers more as a trademark, either for ATOMIC FIREBALL candy or DR. MCGILLICUDDY'S FIREBALL cinnamon whisky, than as a nondistinctive term for a specific flavor. *Id.* There was also no evidence in the record that any competitors in the whisky or liqueur fields used the term "fireball" at the time of registration. *Id.* The Board's finding is therefore supported by substantial evidence.[4]

Because the Board applied the correct legal test to assess whether FIREBALL was generic at the time of registration and the Board's finding that FIREBALL was not generic is supported by substantial evidence, we affirm the Board's decision with respect to Bullshine's appeal.

---

[4] While contrary evidence was surely admitted, we affirm if the Board's fact finding is supported by substantial evidence.

## II. Sazerac's Cross Appeal

Sazerac argues the Board erred in its likelihood of confusion analysis in three ways: (1) in its analysis of the fame of FIREBALL, (2) in finding FIREBALL is conceptually weak, and (3) by not considering the sixth *DuPont* factor, the number and nature of similar marks in use on similar goods. Sazerac Br. 55, 66, 71.

We review questions of law de novo and factual findings for substantial evidence. *In re Pennington Seed, Inc.*, 466 F.3d 1053, 1056 (Fed. Cir. 2006). Likelihood of confusion is a question of law. *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002). "Whether a likelihood of confusion exists" is "aided by application of the thirteen *DuPont* factors." *Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1319 (Fed. Cir. 2018) (citing *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973)). "Each of the *DuPont* factors presents a question of fact." *Bose*, 292 F.3d at 1371.

### A.

Sazerac argues the Board erred in its analysis of the fifth *DuPont* factor, fame of the opposer's mark, by finding FIREBALL is not famous. Sazerac's Br. 55.

The Board's finding that FIREBALL is not famous is supported by substantial evidence. The Board found FIREBALL did not achieve fame because it had "no context for [Sazerac's] advertising and sales figures, or its other evidence of strength, such as how the figures for [products bearing Sazerac's pleaded marks] compare with that for other brands of whiskey and liqueurs." *Sazerac*, 2023 WL 2423356 at *25 (cleaned up). For example, the Board noted while rankings were provided, such as "[i]n 2014, FIREBALL whisky became the #1 shot by volume in the U.S.," *id.* at *7, there was not testimony from the provider of the rankings or other context to determine what the statistics represent, *id.* at *25. Additionally, the Board found much of the evidence related to shot drinkers specifically,

but shots are just a subset of the identified goods, which were defined to include whisky or liqueurs more broadly. *Id.*

Sazerac's arguments for fame do not overcome substantial evidence review. Sazerac takes issue with the Board's requirement for context, relying on similarities between the evidence it provided and the evidence that was sufficient for a finding of fame in *Bose*. Sazerac Br. 57. But fame is a question of fact that requires a case by case analysis. The Board in this case did not require evidence of market share, the error we identified in *Bose*, 293 F.3d at 1375–76, but required a way to contextualize the evidence it had before it. *Omaha Steaks*, 908 F.3d at 1320. As we noted in *Omaha Steaks*, context is still relevant to the analysis of fame, but a particular type of context is not required. *Id.* Moreover, Sazerac does not address the Board's finding that much of the evidence submitted relates to shots, which is only a subset of the genus of goods identified. *Sazerac*, 2023 WL 2423356 at *25. On this record, the Board's finding regarding fame is supported by substantial evidence.

The Board also held that because FIREBALL is commercially strong, despite not finding fame, it is entitled to a broad scope of protection. *Id.* at *26. Therefore, even if Sazerac were correct that the Board erred in its fame analysis, any error would be harmless.

B.

Sazerac argues the Board erred in finding FIREBALL is conceptually weak. Sazerac Br. 66.

The Board found Sazerac's FIREBALL mark is conceptually weak because it is highly suggestive. *Sazerac*, 2023 WL 2423356 at *26. The Board cited to evidence that Sazerac twice admitted, once to the United States Patent and Trademark Office and once in federal court, that FIREBALL is not inherently distinctive. *Id.* The Board also looked to evidence that FIREBALL is minimally distinctive for any particular whisky and liqueur, citing to

evidence of recipes with "fireball" in the name that include whisky or liqueur as ingredients. *Id.* The Board also found "fireball" is highly suggestive of the taste and flavor of Sazerac's "sweet/spicy cinnamon"-flavored whisky/liqueur. *Id.* Sazerac admits that its product and ATOMIC FIREBALL candy have the same flavoring, and "fireball" has been widely used by third parties to denote the flavor in popcorn, ice cream beef jerky, as well as in liquid flavorings to be added to food and beverages. *Id.*

Sazerac principally argues the Board erred by considering dissimilar goods such as popcorn and beef jerky. Sazerac Br. 66. Sazerac has not persuasively explained why it was error for the Board to discuss evidence that "fireball" has been used to denote the flavor in dissimilar goods. But even if that discussion was error, substantial evidence still supports the Board's finding Sazerac's mark is conceptually weak. The Board also relied on Sazerac's sworn statements, "fireball" recipes that include whisky or liqueur, and an admission that Sazerac's product replicates a known taste. *Sazerac*, 2023 WL 2423356 at *26. This is substantial evidence.

C.

Sazerac argues the Board erred by not considering the sixth *DuPont* factor, the number and nature of similar marks in use on similar goods. Sazerac Br. 71.

Each *DuPont* factor must be considered when they are of record. *In re Guild Mortgage Co.*, 912 F.3d 1376, 1379 (Fed. Cir. 2019). The Board noted it "consider[ed] the likelihood of confusion factors about which there is evidence and argument." *Sazerac*, 2023 WL 2423356 at *23. For example, the Board found "[t]here is no evidence that any of [Bullshine's] competitors in the whisky or liqueur fields used the term FIREBALL at the time of registration." *Id.* at *21. The Board also found Sazerac "successfully enforced its asserted rights in FIREBALL against many of the third-party users of the term." *Id.* at *22. The Board

found in favor of Sazerac regarding the sixth *DuPont* factor.[5]

Despite this finding, the Board determined Sazerac's "FIREBALL mark is so conceptually weak, the marks FIREBALL and BULLSHINE FIREBULL are too different in appearance and sound, and especially meaning and commercial impression, for confusion to occur." *Id.* at *30; *id.* at *23 ("In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods." (citing *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103 (Fed. Cir. 1976)). Sazerac does not dispute that substantial evidence supports the Board's findings with respect to the similarity of the marks, and we affirm the Board's finding with respect to the mark's conceptual weakness. On this record, we affirm the Board's determination of no likelihood of confusion.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Because the Board did not err in finding FIREBALL was not generic at the time of registration and determining there is no likelihood of confusion between FIREBALL and BULLSHINE FIREBULL, we affirm.

**AFFIRMED**

## COSTS

No costs.

---

[5] Though these fact findings appear in the Board's discussion of genericness, it is clear they favor Sazerac, and equally clear the Board concluded that the other factors in the likelihood of confusion analysis tipped the scales in favor of Bullshine.